*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0860**

In the Matter of the Appeal by Serenity Adult Day Center
of the Order of License Revocation License No. 1094723 (Rule 223).

**Filed April 17, 2024**
**Affirmed**
**Schmidt, Judge**

Minnesota Department of Human Services
File No. 60-1800-38000

Christa J. Groshek, Aaron J. Roy, Groshek Law, P.A., Minneapolis, Minnesota (for relator Serenity Adult Day Center)

Keith Ellison, Attorney General, Morgan Alexander, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Human Services)

Considered and decided by Wheelock, Presiding Judge; Slieter, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

In this certiorari appeal, relator Serenity Adult Day Center (Serenity) challenges an order by respondent Minnesota Department of Human Services (DHS) revoking Serenity's license to provide adult day services. Serenity argues that the revocation is (1) arbitrary and capricious and unsupported by substantial evidence, (2) based on an unlawful procedure, and (3) an abuse of discretion as to the choice of sanction. We affirm.

**FACTS**

In 2019, DHS issued a license to Serenity to provide adult day services. DHS conducted a license review in September 2020 and determined that Serenity violated numerous rules and regulations.

DHS issued an order of conditional license on July 12, 2021, stating that Serenity's license to provide adult day services was being placed on conditional status "[d]ue to the serious and chronic nature of [the] violations, and the conditions in the program, which impact the health and safety of persons served in [Serenity's] care[.]" The order then listed 19 statutory and rule violations regarding the provision of adult day services. The order required Serenity to take corrective actions either immediately or within 15, 30, or 60 days. The order further required Serenity to comply with three terms demanding specific actions be completed within 15, 20, and 30 days. The order provided instruction for requesting reconsideration within ten days should Serenity wish to administratively appeal the conditional license. Serenity did not appeal the conditional license order. Instead, Serenity contracted with a consultant on October 14, 2021, to assist with achieving and maintaining compliance with the order and license terms.

On October 19, 2021, a senior licensor with DHS conducted an unannounced review of the operations at Serenity. The licensor found no evidence that Serenity had taken any corrective actions since DHS issued the order of conditional license. The records Serenity provided to the licensor were, with one exception, the same as those provided in the September 2020 review. Mohamed Albert, the registered agent for Serenity, admitted that Serenity had not followed the order by failing to notify the program participants that

2

Serenity had been issued a conditional license. Albert also admitted that Serenity had not yet developed a corrective action plan. Albert noted that the consultant would be assisting Serenity to develop the corrective action plan as well as completing other tasks to achieve compliance. After the review, the licensor discussed her observations with her supervisors at DHS, and DHS decided to take action to revoke Serenity's license.

Serenity's consultant contacted DHS on October 20, 2021, and noted that she had "just scratched the surface" of getting participant records into compliance and they were "still in the planning stage" of what was going to be a "bottom up rebuild to gain compliance." The consultant also notified DHS on November 18, 2021, that the 30-day requirements were completed at Serenity. DHS did not respond to these communications.

On November 19, 2021, DHS issued an order revoking Serenity's license. The revocation order stated that Serenity had failed to comply with the terms of the conditional license order and listed 15 violations, each of which had also been cited in the conditional license order.

Serenity appealed the revocation order, and a contested-case hearing was held by an administrative law judge (ALJ) in August 2022. The ALJ heard testimony from DHS employees as well as Albert and his wife. The DHS licensor testified regarding the details of her review and her conclusion that Serenity had not taken any corrective action following the conditional license order. The licensor also testified that Albert appeared to comprehend the conversation during the review and that she had not received a request from Albert for assistance in reviewing the conditional license or understanding the requirements.

Albert testified that individuals had received verbal and written notices informing them of Serenity's conditional license. Albert also testified that, after receiving the conditional license, he looked for, found, and hired a consultant to assist him in getting Serenity in compliance. Albert testified that DHS erred in finding various violations, but admitted he did not create new documents or policies to address the violations until after he hired the consultant.

The ALJ concluded that DHS "correctly determined that [Serenity] failed to comply with three terms of the Order of Conditional License and correctly determined that [Serenity] committed 15 licensing violations." The ALJ also concluded that DHS had established that revocation of Serenity's license was an "appropriate sanction, considering the nature, chronicity and severity of [Serenity's] failure to comply with the Order of Conditional License and the multiple, repeated violations of laws and rules designed to protect the health, safety and welfare of the persons served by [Serenity's] program." The ALJ found that where evidence and testimony differed, DHS's witnesses were more credible. The ALJ recommended that the commissioner of human services affirm the order revoking Serenity's license.

The commissioner modified two findings of fact by, in part, including findings that (1) the commissioner considered the effect of Serenity's "violations on the health, safety, and rights of the persons served" before issuing the conditional license, and (2) the conditional license provided the requisite statuary information in "plain language." The commissioner then affirmed the order revoking Serenity's license.

This appeal follows.

**DECISION**

**I.    The decision to revoke Serenity's license was not arbitrary and capricious and is supported by substantial evidence.**

An administrative agency's decision enjoys a presumption of correctness. *In re Annandale NPDES/SDS Permit Issuance*, 731 N.W.2d 502, 513 (Minn. 2007). Appellate courts defer to the agency's expertise and special knowledge in its field. *Id.*

Appellate courts may reverse an agency decision if the substantial rights of the petitioner may have been prejudged because the findings, inferences, conclusions, or decisions are: (a) in violation of constitutional provisions; (b) in excess of the statutory authority or jurisdiction of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) unsupported by substantial evidence in view of the entire record as submitted; or (f) arbitrary or capricious. Minn. Stat. § 14.69 (2022). An agency decision is arbitrary and capricious if the agency:

> (a) relied on factors not intended by the legislature; (b) entirely failed to consider an important aspect of the problem; (c) offered an explanation that runs counter to the evidence; or (d) the decision is so implausible that it could not be explained as a difference in view or the result of the agency's expertise.

*Citizens Advocating Responsible Dev. v. Kandiyohi Cnty. Bd. of Comm'rs*, 713 N.W.2d 817, 832 (Minn. 2006). An agency's conclusions are not arbitrary and capricious if there is a "rational connection between the facts found and the choice made." *In re Excess Surplus Status of Blue Cross & Blue Shield of Minn.*, 624 N.W.2d 264, 277 (Minn. 2001); *see also In re Denial of Contested Case Hearing Requests*, 993 N.W.2d 627,

646 (Minn. 2023) (stating that the arbitrary or capricious standard considers whether the agency has not "genuinely engaged in reasoned decision-making" (quotation omitted)).

An appellate court must affirm an agency's decision when "the record contains substantial evidence supporting a factual finding[.]" *In re Excelsior Energy, Inc.*, 782 N.W.2d 282, 290 (Minn. App. 2010) (quotation omitted). The reviewing court must not substitute its judgment for that of the administrative body when the agency's findings are properly supported by evidence. *In re Denial of Eller Media Co.'s Applications for Outdoor Device Advert. Permits*, 664 N.W.2d 1, 7 (Minn. 2003). If an administrative agency engages in reasoned decision-making, appellate courts "will affirm, even though it may have reached a different conclusion had it been the factfinder." *Cable Commc'ns Bd. v. Nor-West Cable Commc'ns P'ship*, 356 N.W.2d 658, 669 (Minn. 1984).

"The substantial-evidence standard addresses the reasonableness of what the agency did on the basis of the evidence before it." *In re Expulsion of A.D.*, 883 N.W.2d 251, 259 (Minn. 2016) (quotation omitted); *see also In re NorthMet Project Permit to Mine Application*, 959 N.W.2d 731, 749 (Minn. 2021) (stating that the substantial-evidence analysis determines "whether the agency has adequately explained how it derived its conclusion and whether that conclusion is reasonable" (quotation omitted)). "The substantial evidence test requires a reviewing court to evaluate the evidence relied upon by the agency in view of the entire record as submitted." *Cable Commc'ns Bd.*, 356 N.W.2d at 668. Substantial evidence is defined as: "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence

6

considered in its entirety." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 189 (Minn. App. 2010) (quotation omitted). Appellate courts defer to the agency's findings "regarding conflicts in testimony, the weight given to expert testimony and the inferences to be drawn from testimony." *Id.* (quotation omitted).

Here, Serenity admits that the record reflects it did not "fully comply with all requirements of the conditional license and statutes." Nonetheless, Serenity argues this court should reverse because the noncompliance "does not reach the level of requiring a revocation." Serenity then asserts that DHS's revocation order was "undoubtably arbitrary" and that the ALJ's recommendation was "clearly erroneous" for failing to consider the actions taken by Serenity. We are not persuaded.

The order of conditional license required Serenity to notify program participants of Serenity's conditional license within 15 days, submit a list of those individuals that received the notices within 30 days, file a plan detailing corrective action within 20 days, and complete an audit of participant and personal records within 30 days. Nearly three months passed between the issuance of the conditional license order and the subsequent review. Yet, during that three-month time period, Serenity had not provided any notice to program participants, submitted a corrective action plan, or completed the audit of participant and personnel records.

The commissioner adopted as modified the ALJ's detailed findings on Serenity's failure to satisfy the terms of the conditional license, all of which have support in the record. Those findings reflect that Serenity had committed 15 violations of Minnesota laws and regulations on licensing for the provision of adult day services, and the commissioner

7

concluded that those violations affected the health and safety of participants in Serenity's program. Serenity's own consultant stated that Serenity needed a "bottom up rebuild to gain compliance," which the ALJ found to be an admission that Serenity, as of October 20, 2021, was not in compliance with the law and rules governing adult day centers.

Ultimately, the commissioner concluded that DHS justifiably revoked the license because Serenity did not timely meet the terms of the order of conditional license or remedy the licensing violations. The commissioner's findings are supported by substantial evidence in the record and demonstrate that Serenity failed to satisfy the requirements of the conditional license. The record also reflects that the commissioner's decision was neither arbitrary nor capricious. Thus, we defer to the commissioner's findings and affirm the decision to revoke Serenity's license.

## II. Serenity's challenges to the order of conditional license are not properly before this court.

A conditional license must state the following in "plain language": (1) the conditions that constitute a violation of the law or rule; (2) the specific law or rule violated; (3) the time allowed to correct each violation; and (4) the length and terms of the conditional license, and the reasons for making the license conditional. *See* Minn. Stat. § 245A.06, subd. 1 (2022). The license holder may request reconsideration of the order of conditional license by notifying the commissioner in writing within ten calendar days after the license holder receives the order, or ten calendar days after the commissioner issues the order if it is issued through the provider hub. *Id.*, subd. 4 (2022).

8

Serenity argues that the order of conditional license was not written in "plain language" as required by the statute because English is not Albert's first language. But Serenity's arguments regarding the conditional license are not properly before us.

Serenity collaterally attacks the conditional license by claiming the terms were not provided in "plain language." However, Serenity's opportunity to challenge the terms was when DHS issued, and Serenity received, the conditional license. *See id.* (requiring reconsideration to be in writing and submitted within ten calendar days). The ALJ found that Serenity "never appealed or sought reconsideration of the Order of Conditional License," and never contacted DHS "with any questions or concerns about the Order of Conditional License." Accordingly, Serenity's argument challenging aspects of the terms in the conditional license is not properly before us.[1]

### III. The decision to revoke Serenity's license was not an abuse of discretion.

The commissioner may impose sanctions when a licensee fails to comply with an applicable law, rule, or term of a correction order or conditional license. Minn. Stat. §§ 245A.06-.07 (2022). When issuing a sanction, the commissioner must "consider the nature, chronicity, or severity of the violation of law or rule and the effect of the violation on the health, safety, or rights of persons served by the program." Minn. Stat. § 245A.07, subd. 1(a)(3). "Absent a clear abuse of discretion, a reviewing court must . . . defer to an agency's choice of sanction." *In re Revocation of Fam. Child Care Lic. of Burke*, 666 N.W.2d 724, 726 (Minn. App. 2003).

---

[1] DHS offers translation services, but the record does not reflect that Serenity or Albert ever requested translation services.

9

Serenity argues that the decision to revoke its license was an abuse of discretion because a less severe sanction "would have properly served the purpose of protecting the public and deterring such conduct in the future." Although revocation is one of several options available to the commissioner to address issues of compliance with applicable laws, rules, or terms of a conditional license, the legislature has granted the commissioner wide discretion to choose the appropriate remedy in each particular case. Minn. Stat. § 245A.07, subd. 1(a) ("In addition to making a license conditional under section 245A.06, the commissioner *may* suspend or revoke the license, impose a fine, or secure an injunction against the continuing operation of the program[.]" (emphasis added)); *see also* Minn. Stat. § 645.44, subd. 15 (2022) ("'May' is permissive."). The record reflects that the ALJ, and the commissioner by adopting the ALJ's recommendation, considered the required factors in determining that revocation was the appropriate sanction in this particular case.

Because the commissioner found that Serenity failed to comply with the terms of the conditional license several months after DHS issued its order, the commissioner did not clearly abuse her discretion in choosing the sanction of revoking Serenity's license. As such, we defer to the commissioner's determination of the appropriate sanction.

**Affirmed.**